# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

№ 15-CV-593 (ENV) (RER)

_____

EDUARDO MALDONADO LOPEZ,

ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED,

Plaintiff,

VERSUS

CAJMANT LLC, JOHN SCHMIDT, ROSE SCHMIDT, WHEATFIELD DISTRIBUTORS LLC, MARCELO CAJAMARCA, AND ROBERT W. VOGLER,

Defendants.

_____

**REPORT & RECOMMENDATION**

October 26, 2020

_____

**TO THE HONORABLE ERIC N. VITALIANO**
**SENIOR UNITED STATES DISTRICT JUDGE**

**RAMON E. REYES, JR., U.S.M.J.:**

Plaintiff Eduardo Maldonado Lopez ("Maldonado Lopez" or "Plaintiff") brought this action against his former employers, Cajmant, LLC ("Cajmant"), Wheatfield Distributors, LLC ("Wheatfield"), John Schmidt, Rose Schmidt, Marcelo Cajamarca, and Robert Vogler ("Vogler") (collectively, "Defendants"), for violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA") and the New York Labor Law, NYLL §§ 190 and 650 *et seq*. ("NYLL"). (Dkt. No. 17 ("S.A.C.")). All Defendants aside from Vogler either settled or were voluntarily dismissed.[1]

---

[1] In October 2018, Plaintiff entered into a settlement agreement with Defendants John Schmidt, Rose Schmidt, and Wheatfield. (Dkt. Nos. 80, 88). In August 2019, Plaintiff voluntarily dismissed Defendants Marcelo Cajamarca and Cajmant. (Dkt. Nos. 97, 99).

1

(Dkt. Nos. 80, 88, 97, 99). Initially, Vogler appeared *pro se* and defended the action. (*See* Dkt. No. 24). However, he subsequently failed on numerous occasions to participate in the case, including to answer the Second Amended Complaint. (*See* Dkt. No. 63). Accordingly, the Clerk of the Court entered default against him. (ECF Entry dated 8/4/2017). Subsequently, Plaintiff filed this Motion for Default Judgment against Vogler (Dkt. No. 104 ("Mot. for Default J.")), which Your Honor referred to me for a report and recommendation. (Order dated 10/2/2019).

For the reasons stated herein, I respectfully recommend that Plaintiff's Motion be granted in part and default judgment be entered against Vogler in the amount of (1) $36,621.75 in compensatory damages, (2) $36,621.75 in liquidated damages, (3) pre-judgment interest on his compensatory damages at a rate of 9% per annum from June 14, 2013 until judgment, (4) post-judgment interest on his entire monetary award at the rate set out in 28 U.S.C. § 1691, (5) $34,989.50 in attorney's fees, and (6) $1,041.02 in costs.

## BACKGROUND[2]

Your Honor is well versed in the facts and procedural history of this case; therefore, I recite only the most relevant information here.[3] Plaintiff is Defendants' former employee. (S.A.C. ¶ 30). Plaintiff alleges that Defendant Cajmant functioned as "a vehicle through which" Defendants Vogler, John Schmidt, Rose Schmidt, and Marcelo Cajamarca (collectively, "Individual Defendants"), paid employees of Wheatfield. (S.A.C. ¶ 26). Wheatfield, owned by Rose and John Schmidt, is a "delivery business that delivers bread and other baked goods to restaurants and

---

[2] Unless otherwise indicated, the following factual allegations from the Second Amended Complaint are taken as true. *See Bricklayers Ins. & Welfare Fund v. R. Smith Restoration*, No. 11-CV-3854 (FB) (RER), 2013 WL 2120306, at *2 (E.D.N.Y. Mar. 8, 2013), *R & R adopted by* 2013 WL 2119628 (May 15, 2013).

[3] A full account of the facts and procedural history can be found by reviewing the docket sheet.

supermarkets in the tri-state area." (S.A.C. ¶ 22). Cajmant's only business was to deliver "baked goods distributed by Wheatfield to Wheatfield's clients." (S.A.C. ¶ 27).

On October 15, 2011, Defendants hired Plaintiff as a delivery driver under an oral contract that he would be paid $900 per week. (Dkt. No. 110 ("Maldonado Lopez Aff.") ¶ 9); S.A.C. ¶ 30). As a delivery driver, Plaintiff distributed baked goods "to restaurants and supermarkets in New York and New Jersey." (S.A.C. ¶ 31). Plaintiff made these deliveries using his own vehicle and Defendants did not compensate him for gas, insurance, or other "wear and tear" on his vehicle. (Maldonado Lopez Aff. ¶ 10; S.A.C. ¶ 51). Plaintiff worked for Defendants through January 25, 2014. (Maldonado Lopez Aff. ¶ 9; S.A.C. ¶ 36).

Defendant Vogler was a managing member of Cajmant. (S.A.C. ¶ 25). In his capacity as a managing member, Vogler maintained the payroll records, supervised payroll calculations, signed Plaintiff's paychecks, and distributed tax forms to Cajmant employees. (S.A.C. ¶ 62).

In February 2015, Plaintiff filed this suit against Defendants alleging Defendants failed to compensate Plaintiff for overtime in violation of the FLSA and NYLL as well as made unlawful deductions in violation of the NYLL. (*See* Dkt. No. 1). Defendant Vogler initially appeared but later defaulted. (*See* Dkt. No. 63). Plaintiff subsequently moved for default judgment against Defendant Vogler only. (*See* Dkt. No. 104).

## LEGAL STANDARD

When considering default judgment under Federal Rule of Civil Procedure 55 ("Rule 55"), "the court must accept as true all well-pleaded allegations in the complaint." *Said v. SBS Elecs., Inc.*, No. 08-CV-3067 (RJD) (JO), 2010 WL 1265186, at *2 (E.D.N.Y. Feb. 24, 2010), *R & R adopted as modified by* 2010 WL 1287080 (Mar. 31, 2010). "Even so, 'after default . . . it remains

for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law.'" *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (quoting *Leider v. Ralfe*, No. 01 Civ. 3137, 2004 WL 1773330, at *7 (S.D.N.Y. July 30, 2004)).

In making the damages determination, the court is not bound by the well-pleaded allegations in the complaint. *Said*, 2010 WL 1265186, at *2. Rather, after a finding of liability, "[i]t is the court's responsibility to establish that damages have an evidentiary basis that can be ascertained with 'reasonable certainty.'" *Xin Long Lin v. New Fresca Tortillas, Inc.*, No. 18-CV-3246 (RJD) (RER), 2019 WL 3716199, at *2 (E.D.N.Y. May 1, 2019) (citing *Cement and Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 235 (2d Cir. 2012)), *R & R adopted by* 2019 WL 3714600 (May 28, 2019).

## DISCUSSION

While Plaintiff brings four causes of action,[4] the allegations amount to: (1) Defendants failed to properly compensate him for overtime work in violation of the FLSA and NYLL, and (2) Defendants made unlawful deductions from his paychecks in violation of NYLL and in breach of his contract.[5] (*See* S.A.C. ¶¶ 86–104). Plaintiff seeks compensatory damages, liquidated damages, pre-judgment interest, attorney's fees and costs. (S.A.C. at 19).

---

[4] Plaintiff brings a cause of action for (1) failure to compensate for overtime in violation of the FLSA, (2) failure to compensate for overtime in violation of NYLL, (3) unlawful deductions from paychecks in violation of NYLL, and (4) breach of contract. (*See* S.A.C. ¶¶ 86–104).

[5] While breach of contract and allegations regarding a "miscellaneous" deduction from Plaintiff's paychecks were alleged in the Second Amended Complaint, (S.A.C. ¶¶ 92–104), Plaintiff makes no mention of them in his motion for default judgment and they are therefore abandoned. *See Daiuto v. Evolve Guest Controls LLC*, No. 17-CV-1279 (NGG) (JO), 2020 WL 1466117, at *5 (E.D.N.Y. Mar. 26, 2020) (adopting report and recommendation).

4

## I. Liability

Ultimately, Plaintiff fails on his first claim for overtime compensation but succeeds on his unlawful deductions claim.

### A. Employer-Employee Relationship

As a threshold issue, Plaintiff must adequately allege an employer-employee relationship. *Bosoro v. Am. Comprehensive Healthcare Med. Grp., P.C.*, No. 14-CV-1099 (ENV) (SMG), 2015 WL 5676679, at *2 (E.D.N.Y. Aug. 31, 2015) (quoting 29 U.S.C. § 203(d)), *R & R adopted by* 2015 WL 5686481 (Sept. 25, 2015). The analysis for the employer-employee relationship under the FLSA and NYLL are similar and can be done in conjunction.

#### 1. Plaintiff was Defendants' Employee

Plaintiff alleges that he was Defendants' employee but that Defendants "intentionally misclassified Plaintiff . . . as [an] independent contractor[ ] in an effort to avoid their statutory obligations as employers." (S.A.C. ¶ 45). Thus, Plaintiff must allege sufficient facts showing he was, in fact, misclassified. The Second Circuit has developed "several multi-factor tests related to this inquiry." *Agerbrink v. Model Serv. LLC*, 787 F. App'x 22, 25 (2d Cir. 2019) (collecting cases). However, the aim of the tests is to determine "'whether, as a matter of economic reality, [a] worker[ ] depend[s] upon someone else's business for the opportunity to render service or [is] in business for [herself].'" *Id.* (quoting *Saleem v. Corp. Transp. Grp., Ltd.*, 854 F.3d 131, 139 (2d Cir. 2017)) (alteration in original).

Keeping in mind the fluidity of the different tests and the primary focus described above, I use the five-factor test laid out in *Brock v. Superior Care* to determine whether Plaintiff has

sufficiently alleged he was an employee. 840 F.2d 1054, 1058–59 (2d Cir. 1988). The five factors are:

> (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.

*Id.* These factors track closely with the test used by courts to determine whether an individual is an employee under the NYLL. *Rose v. Nw. Mut. Life Ins. Co.*, 220 F. Supp. 3d 363, 373 (E.D.N.Y. 2016) (noting the test to determine whether an individual is an employee under NYLL is "whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll, and (5) was on a fixed schedule"). Importantly, "[n]o one of these factors is dispositive; rather, the test is based on a totality of the circumstances." *Brock*, 840 F.2d at 1059.

Plaintiff sufficiently alleges that he was Defendants' employee. First, Plaintiff alleges Vogler controlled Plaintiff's work schedule, his wages, and maintained control over the conditions of Plaintiff's employment and that Cajmant "assigned the daily routes." (Maldonado Lopez Aff. ¶¶ 19, 22). In addition, Plaintiff alleges he "[c]ould not work for any other business, much less another baked goods distributor." (S.A.C. ¶ 46(b)). Second, Plaintiff alleges he "never received any profit distribution or similar payout." (S.A.C. ¶ 38). Third, Plaintiff alleges "[h]is work was manual in nature, did not require any specialized technical or creative skill, and he did not manage, supervise, evaluate, or discipline other employees, set their schedules, determine their pay, or possess the power to hire or fire them." (S.A.C. ¶ 34). Fourth, Plaintiff alleges he worked for Defendants from October 15, 2011 through January 25, 2014. (S.A.C. ¶¶ 30, 36; Maldonado Lopez Aff. ¶ 9). Finally, Plaintiff alleges "[h]is job entailed picking up baked goods from bakeries and

delivering them to restaurants or supermarkets" (S.A.C. ¶ 31), which was the crux of Defendants'

business. (S.A.C. ¶ 27).

Accordingly, Plaintiff sufficiently pleads that he was an employee, not an independent

contractor, under the FLSA and NYLL. *See Ansoumana v. Gristede's Operating Corp.*, 255 F.

Supp. 2d 184, 192 (S.D.N.Y. 2003) (finding, as a matter of law, that delivery workers for

supermarkets and drugstores categorized as independent contractors by their employers were

"employees, not independent contractors" under the FLSA); *Ethelberth v. Choice Sec. Co.*, 91 F.

Supp. 3d 339, 350–52 (E.D.N.Y. 2015) (finding, as a matter of law, that security guard who was

categorized as an independent contractor by his employer was, in fact, an employee under the

FLSA and NYLL).

### 2.   Defendant Vogler was Plaintiff's Employer

Plaintiff adequately alleges that Vogler was his employer. The FLSA defines "employer"

as "any person acting directly or indirectly in the interest of an employer in relation to an

employee." 29 U.S.C. § 203(d). Similarly, under NYLL, "employer" is defined as "any

person . . . employing any individual in any occupation, industry, trade, business or service." N.Y.

LAB. LAW § 190(3).

Courts in the Second Circuit apply a four-factor test to determine whether a defendant

meets the definition of employer under the FLSA and NYLL.[6] *Guaman v. Krill Contracting, Inc.*,

No. 14-CV-4242 (FB) (RER), 2015 WL 3620364, at *3 (E.D.N.Y. June 9, 2015) (adopting report

and recommendation). The test weighs four factors: "'whether the alleged employer (1) had the

---

[6] "The question of whether the tests for 'employer' status are the same under the FLSA and the NYLL . . . has not been answered by the New York Court of Appeals." *Jin Dong Wang v. LW Rest., Inc.*, 81 F. Supp. 3d 241, 258 (E.D.N.Y. 2015) (quoting *Irizarry v. Catsimatidis*, 722 F.3d 99, 117 (2d Cir. 2013)) (internal quotation marks omitted). However, courts in the Second Circuit have treated the definitions as coextensive. *Id.*

power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Id.* (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)). The test is one of the totality of the circumstances and thus, "[n]o one of the four . . . factors standing alone is dispositive." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 35 (E.D.N.Y. 2015) (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)) (adopting report and recommendation).

First, Plaintiff argues Defendant Vogler had hiring and firing authority. (Maldonado Lopez Aff. ¶ 23). Second, as described previously, Plaintiff alleges Defendant Vogler controlled Plaintiff's work schedule, his wages, and maintained control over the conditions of Plaintiff's employment. (Maldonado Lopez Aff. ¶¶ 19, 22). Third, Plaintiff alleges Defendant Vogler signed Plaintiff's paychecks, was "involved in supervising the payroll calculations," and "maintained the payroll records of Cajmant drivers, including Plaintiff." (S.A.C. ¶¶ 62(a), (c), and (e)). In addition, Plaintiff alleges Defendant Vogler "issued tax forms to all Cajmant drivers, Plaintiff included." (S.A.C. ¶ 62(d)). Fourth, Plaintiff alleges Defendant Vogler "maintained employment records of Cajmant drivers." (S.A.C. ¶ 63(e)).

Therefore, based on the totality of the circumstances, Defendant Vogler acted as Plaintiff's employer as defined under the FLSA and NYLL and is jointly and severally liable to Plaintiff. *See, e.g.*, *Fermin*, 93 F. Supp. 3d at 36–37 (finding individual defendants who "had the power to hire and fire the employees, to determine rates of pay and work schedules and to supervise and control the employees' work" established their joint and several liability as employers under the FLSA and the NYLL); *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 128 (E.D.N.Y. 2011) (finding individual defendant who "had authority over personnel decisions, authority over payroll

decisions, and authority to hire and fire employees" jointly and severally liable as an employer under the FLSA and the NYLL) (adopting report and recommendation).

**B. Overtime Compensation**

Plaintiff alleges Defendants failed to properly compensate him for overtime under the FLSA and NYLL. "To plead a plausible FLSA overtime claim, [p]laintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013). "The plaintiff's burden . . . likewise applies in the context of the NYLL overtime compensation claim." *Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV) (VMS), 2016 WL 6585810, at *11 (E.D.N.Y. Sept. 30, 2016) (citing 12 N.Y.C.R.R. § 142-2.2), *R & R adopted by* 2016 WL 6601445 (Nov. 7, 2016).

Plaintiff fails to sufficiently allege that he worked more than forty hours per week. In the Second Amended Complaint, which is operative, Plaintiff alleges his "usual schedule was 11 PM until 7 AM or later, Saturday through Wednesday, for a total of 48 or more hours per week."[7] (S.A.C. ¶ 32). Plaintiff further alleges he "occasionally worked a [sic] eight hour shift on Sunday as well, working a total of 56 hours in those weeks." (S.A.C. ¶ 32). In addition, Plaintiff alleges

---

[7] In the two preceding Complaints, Plaintiff sufficiently alleged that he worked more than forty hours per week. (*See* Dkt. No. 1 ¶ 23; Dkt. No. 7 ¶ 23). In those Complaints, Plaintiff alleged his "usual schedule was 11 PM until 7 AM or later, Monday through Saturday, for a total of 48 or more hours per week." (*Id.*). Plaintiff also alleged that he "occasionally worked an eight hour shift on Sunday as well, working a total on those weeks of 56 hours." (*Id.*). However, these allegations cannot be considered because the operative complaint is the Second Amended Complaint, which supersedes the previous Complaints and renders them of no legal effect. *E.g., Pacific Bell Tel. Co. v. Linkline Comm'ns, Inc.*, 555 U.S. 438, 456 n. 4 (2009) ("Normally, an amended complaint supersedes the original complaint."); *Dluhos v. Floating and Abandoned Vessel, Known as New York*, 162 F.3d 63, 68 (2d Cir.1998) ("[I]t is well established that an amended complaint ordinarily supercedes the original, and renders it of no legal effect."); 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1476 (2d Ed. 1990) ("[A]pleading that has been amended under Rule 15(a) [of the Federal Rules of Civil Procedure] supercedes the pleading it modifies ... Once an amended pleading is interposed, the original pleading no longer performs any function in the case.").

that "[o]n numerous days, [he] had to come to work before 11 PM and finished his shift after 7 AM." (S.A.C. ¶ 32). These allegations represent the entirety of Plaintiff's assertions regarding the number of hours he worked in the Second Amended Complaint.[8]

These allegations are insufficient to plead an overtime claim because the arithmetic is wrong. A weekly schedule of Saturday through Wednesday is five days. A daily schedule of 11 PM to 7 AM is eight hours. Eight multiplied by five is forty—not forty-eight, as Plaintiff alleges. Second, Plaintiff alleges he "occasionally" worked on Sundays, bringing his weekly total hours to fifty-six. (S.A.C. ¶ 32). Yet the schedule he provides—Saturday through Wednesday—already includes Sundays. (S.A.C. ¶ 32).

That Plaintiff "usually" worked forty hours per week combined with the allegation that he had to come in early or stay late on "numerous" occasions suggests there may have been some weeks that he worked in excess of forty hours. However, Plaintiff does not elucidate on his interpretation of "numerous" nor does he provide even an estimate of how early he came in or how late he stayed on these occasions. Without more, Plaintiff fails to allege the "factual context that [would] 'nudge' [his] claim 'from conceivable to plausible.'" *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

[8] Plaintiff's initial motion papers included an affidavit from Plaintiff that parrots the insufficient allegations in the Second Amended Complaint as to hours worked. (*See* Dkt. No. 105 ¶ 7). However, the Court ordered Plaintiff to re-submit that affidavit because it was missing two pages. (Order dated 8/10/2020). Instead of re-submitting the complete initial affidavit, Plaintiff submitted a new affidavit proposing an entirely different work schedule that, if taken as true, would sufficiently allege he worked more than 40 hours a week. (*See* Maldonado Lopez Aff. ¶ 13). Given the internal inconsistencies not only with the Second Amended Complaint but also with each other, the affidavits cannot be credited for Plaintiff's days and hours worked. *See, e.g., Fermin*, 93 F. Supp. 3d at 41 (E.D.N.Y. 2015) (finding inconsistency in the complaint and the plaintiff's affidavit in support of default judgment rendered the plaintiff's inconsistent statements in his affidavit "exceed[ed] the well-pleaded allegations, and [ ] must be disregarded"); *Guaman*, 2015 WL 3620364, at *8 (finding it improper to award damages alleged in the plaintiff's affidavit in support of default judgment where those allegations contradicted the damages alleged in plaintiff's complaint); *see also J & J Sports Productions, Inc. v. Ferreiras*, No. 15-CV-6546, 2018 WL 6168557, at *14 (E.D.N.Y. Nov. 20, 2018 (finding contradictions between affidavit and complaint "indicates that the complaint's allegations are not well-pled" such that default judgment should be denied) (collecting cases).

Accordingly, these allegations alone are insufficient to meet the threshold of a well-pleaded overtime claim. *See Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 115 (2d Cir. 2013) (affirming dismissal of FLSA overtime claim finding that while plaintiff's allegations "could theoretically put her over the 40-hour mark in one or another unspecified week," this was not enough to meet the plausibility standard); *Nakahata*, 723 F.3d at 201 (affirming dismissal of FLSA and NYLL overtime claims where plaintiffs failed to "provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week"); *Kuck v. Planet Home Lending, LLC*, 354 F. Supp. 3d 162, 168 (E.D.N.Y. 2018) (distinguishing the facts in the case at hand where the plaintiffs alleged they "worked 50-55 hours during *every single week* of their employment" from previous cases where the plaintiffs "merely claim[ed] that they 'occasionally,' 'typically,' or 'regularly' worked more than 40 hours in some weeks") (emphasis added).[9]

Therefore, I respectfully recommend Plaintiff's Motion for Default Judgment be denied as to the failure to pay overtime claims under both the FLSA and NYLL.[10]

## C.  Unlawful Deductions

Plaintiff alleges that Defendants "forced Plaintiff . . . to incur expenses while working for Defendants, such as gasoline, insurance, repairs, and other expenses" that "were solely for the benefit of Defendants." (S.A.C. ¶¶ 51, 95). Section 193 of NYLL "explicitly prohibits an employer

---

[9] Also included in Plaintiff's motion papers is a declaration from Dorota Jankowska ("Jankowska"), who prepared Plaintiff's damages' calculations in support of default judgment. (*See* Dkt. No. 107 ("Jankowska Decl.")). Jankowska prepared a spreadsheet to show Plaintiff's damages for his overtime compensation claim. (*See* Dkt. No. 107-1). However, the spreadsheet cannot be considered because it relies on Plaintiff's Affidavit for the hours worked, (Jankowska Decl. ¶ 6(A)), and is inconsistent with the allegations in the Second Amended Complaint.

[10] Even though Plaintiff fails on his only FLSA claim, the Court may still exercise supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(a).

from deducting monies from the wages of an employee except as required by law or as 'expressly authorized in writing' by and 'for the benefit of the employee.'" *Angello v. Lab. Ready, Inc.*, 859 N.E.2d 480, 482 (N.Y. 2006) (quoting N.Y. LAB. LAW § 193(1)(b)). Section 193 further prohibits an employer from "requir[ing] an employee to make any payment by separate transaction unless such charge or payment is permitted as a deduction from wages." N.Y. LAB LAW 193(3)(a).

Plaintiff adequately alleges Defendants required him to pay for gasoline and other vehicle-related expenses himself in violation of section 193(3)(a). (S.A.C. ¶ 51; Maldonado Lopez Aff. ¶¶ 10, 17). Because Plaintiff did not agree to cover these expenses in writing, he sufficiently pleads a violation of Section 193(3)(a). *See, e.g., Armata v. Unique Cleaning Servs., LLC*, No. 13-CV-3625 (DLI) (RER), 2015 WL 12645527, at *7 (E.D.N.Y. Aug. 27, 2015) (finding that defendant's requirement that plaintiff "purchase a monthly unlimited subway pass in order to travel from jobsite to jobsite" violated section 193(3)(a)). Accordingly, I respectfully recommend that Plaintiff's Motion for Default Judgment be granted as to the unlawful deductions claim.

## II. Damages

Plaintiff seeks and is entitled to (1) compensatory damages, (2) liquidated damages, (3) interest, (4) attorney's fees, and (5) costs.

### A. Compensatory Damages

Plaintiff is entitled to compensatory damages for his unlawful deductions claims under NYLL because he sufficiently pleads that Defendants required him to incur outside expenses amounting to unlawful deductions in the form of mileage on his vehicle. Plaintiff estimates he drove 150 miles on Saturdays and 100 miles on all other days. (Maldonado Lopez Aff. ¶¶ 15–16). Plaintiff worked Saturday through Wednesday every week. (S.A.C. ¶ 32). Therefore, he drove

approximately 550 miles every week. Plaintiff requests mileage damages be calculated using the Internal Revenue Service ("IRS") standard mileage rate for employees of businesses, (Dkt. No. 107 ("Jankowska Decl.") ¶ 7(I)), which I find reasonable. *See Xin Long Lin*, 2019 WL 3716199, at *5 ("Standard reimbursement rates may be used in FLSA cases for determining employees' vehicle expenses where an automobile is a 'tool of the trade.'")

In 2011 and 2012, the IRS standard mileage rate for employees was 55.5 cents per mile driven. *See* Internal Revenue Service, STANDARD MILEAGE RATES, https://www.irs.gov/tax-professionals/standard-mileage-rates [hereinafter "IRS Standard Mileage Rates"]. Plaintiff worked 11 weeks in 2011 and 52 weeks in 2012. (Dkt. No. 107-1 ("Calculation of Damages") at 5–6). Therefore, his mileage damages for 2011 and 2012 amount to $19,230.75. In 2013, the IRS standard mileage rate was 56.5 centers per mile driven. *See* IRS Standard Mileage Rates. Plaintiff worked 52 weeks in 2013. (Calculation of Damages at 6–7). Therefore, Plaintiff's mileage damages for 2013 amount to $16,159. Finally, in 2014, Plaintiff worked 4 weeks, (Damages Calculations at 7), and the IRS standard mileage rate was 56 cents per mile driven. *See* IRS Standard Mileage Rates. Therefore, Plaintiff's mileage damages for 2014 amount to $1,232. Accordingly, I respectfully recommend the Court award Plaintiff $36,621.75[11] in compensatory damages.

### B. Liquidated Damages

Plaintiff is entitled to liquidated damages for his unlawful deductions claim. Under NYLL § 198(1-a), a plaintiff may recover "liquidated damages equaling one-hundred percent of wages due." *Cabrera v. Canela*, 412 F. Supp. 3d 167, 184 (E.D.N.Y. 2019). "Under NYLL, 'liquidated damages are presumed unless defendants can show subjective good faith'" "'for believing that

---

[11] $19,230.75 + $16,159 + 1,232 = $36,621.75.

[their] underpayment of wages was in compliance with the law.'" *Fermin*, 93 F. Supp. 3d at 47. Where a defendant has defaulted, such as here, no such good faith can be gleaned. *Xin Long Lin*, 2019 WL 3716199, at *7. Thus, Plaintiff is entitled to liquidated damages equaling one-hundred percent of his compensatory damages due under NYLL § 193. *See Zinno v. Schlehr*, 107 N.Y.S.3d 220, 221 (N.Y. App. Div. 2019) (finding damages owed plaintiff under NYLL § 193 "constituted earned 'wages'").

## C. Interest

Plaintiff is entitled to pre- and post-judgment interest on his compensatory damages award. Under NYLL, courts may "award plaintiffs prejudgment interest at an interest rate of 9% per annum in addition to a liquidated damages award." *Xin Long Lin*, 2019 WL 3716199, at *8. "'Prejudgment interest is calculated [ ] on the unpaid wages due under the NYLL, not on the liquidated damages.'" *Fermin*, 93 F. Supp. 3d at 47 (quoting *Meja v. East Manor USA Inc.*, No. 10-CV-4313 (NG), 2013 WL 3023505, at *8 n. 11 (E.D.N.Y. Apr. 19, 2013)), *R & R adopted by* 2013 WL 2152176 (May 17, 2013) (alteration in original). "To determine the date from which to award prejudgment interest, [c]ourts usually select the median date between when the action was filed and the earliest date on which the cause of action existed." *Sajvin v. Singh Farm Corp.*, No. 17-CV-4032 (AMD) (RER), 2018 WL 4214335, at *8 (E.D.N.Y. Aug. 13, 2018), *R & R adopted by* 2018 WL 4211300 (Sept. 4, 2018).

Here, Plaintiff filed this action on February 6, 2015, (*see* Dkt. No. 1), and the earliest date that Plaintiff's cause of action existed is October 22, 2011, the date of his first paycheck. (*See* Calculation of Damages at 2). Therefore, the median date is June 14, 2013. Accordingly, I respectfully recommend Plaintiff be awarded pre-judgment interest on $36,621.75, his

compensatory damages award, at a rate of 9% per annum, to accrue from June 14, 2013, until entry of judgment.

While Plaintiff does not request post-judgment interest, he "is entitled to post-judgment interest on all money awards as a matter of right" at the rate set out in 28 U.S.C. § 1691. *Guaman*, 2015 WL 3620364, at *11. Therefore, I respectfully recommend that Plaintiff be awarded post-judgment interest on all sums awarded from the date judgment is entered to the date of payment. *Id*.

### D.  Attorney's Fees

Plaintiff is entitled to recover reasonable attorney's fees. N.Y. LAB. LAW § 198(1-a). "The amount of reasonable attorney's fees is determined by multiplying 'the number of hours reasonably expended on the litigation' by 'a reasonable hourly rate,' or 'a presumptively reasonable fee.'" *Guaman*, 2015 WL 3620364, at *12 (quoting *Hensley v. Eckherhart*, 461 U.S. 424, 433 (1983)).

#### 1.  Reasonable Hourly Rate

Reasonable rates may be determined by reviewing similar rates in the district in which the court sits. *Trs. of the Empire State Carpenters Annuity, Apprenticeship, Lab. Mgmt. Coop., Pension and Welfare Funds v. Lynnview Constr. Corp.*, No. 12-CV-5644 (ADS) (AKT), 2013 WL 4852312, at *10 (E.D.N.Y Sept. 10, 2013) (citing *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)) (adopting report and recommendation).

Plaintiff seeks billing rates of $450 for Mr. Wisniewski, the named principal of the law firm and an attorney with almost 25 years of experience litigating wage and hour cases, $225 for mid-level associates, and $125 for paralegals and pre-admission attorneys. (Dkt. No. 106 ("Wisniewski Decl.") ¶¶ 1, 16, 18). Mr. Wisniewski argues these rates are reasonable by citing

caselaw where he was awarded such rates. (Wisniewski Decl. ¶ 16). However, most of the caselaw Mr. Wisniewski cites is from the Southern District of New York. (*Id.*). In the Eastern District of New York, courts have found unreasonable Mr. Wisniewski's fee of $450 per hour and the fee of $125 per hour for paralegals and pre-admission attorneys in similar cases. *See, e.g.*, *Kliger v. Liberty Saverite Supermarket Inc.*, No. 17-CV-2520 (FB) (ST), 2018 WL 4782342, at *9–*10 (E.D.N.Y. Sept. 17, 2018) *R & R adopted by* 2018 WL 4783964 (Oct. 3, 2018) (collecting cases). In those cases, the court adjusted Mr. Wisniewski's fee to $350 per hour and the paralegal and pre-admission attorneys' fees to $75 per hour. *Id.* However, the courts in those cases found $225 per hour for mid-level associates a reasonable fee. *Id*. Accordingly, I respectfully recommend an hourly rate of $350 per hour for Mr. Wisniewski, $225 per hour for the firm's mid-level associates, and $75 per hour for the firm's paralegals and pre-admission attorneys.

### 2. Reasonable Hours

Reasonable hours may be determined by the court's experience, the court's knowledge of the case, and the evidence and arguments presented. *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992) (citing *Di Filippo v. Morizio*, 759 F.2d 231, 234 (2d Cir. 1985)). "[T]he 'results obtained' constitute the most important consideration in determining what hours were reasonably expended." *Favors v. Cuomo*, 39 F. Supp. 3d 276, 291 (E.D.N.Y. 2014) (citing *Hensley*, 461 U.S. at 424). As such, hours expended on unsuccessful claims "based on different facts and legal theories than the successful claims" are not recoverable. *De Marco v. Ben Krupinski Gen. Contractor, Inc.*, No 12-CV-573 (SJF) (ARL), 2014 WL 3696020, at *8 (E.D.N.Y. July 22, 2014) (quoting *Hensley*, 461 U.S. at 435). To address such deficiencies, "'the court has discretion simply to deduct a reasonable percentage of the number of hours claimed.'" *Guaman*, 2015 WL 3620364, at *14 (quoting *Kirsch v. Fleet Street Ltd.*, 148 F. 3d 149, 173 (2d Cir. 1998)).

16

Here, Plaintiff seeks reimbursement for 289.1 hours worked according to the contemporaneous billing records submitted. (Dkt. No. 106-5 at 22). However, Plaintiff failed on his overtime compensation claims under both the FLSA and NYLL. While Plaintiff was successful in his unlawful deductions claim, the underlying facts and legal theory in support of the overtime compensation claims, while related, are ultimately different. Given that the overtime compensation claim is one of four claims brought,[12] I find it appropriate to reduce the attorney's fee award through an across-the-board percentage reduction of hours. To balance the failure on one fourth of Plaintiff's claims with the public policy goals of the FLSA and NYLL fee-shifting provisions, I respectfully recommend a 35% reduction of hours in each category of personnel (e.g., associate, paralegal). *See, e.g.*, *Leevson v. Aqualife USA, Inc.*, 296 F. Supp. 3d 503, 526 (E.D.N.Y. 2017) ("Because the FLSA claims comprised roughly half of plaintiffs' counsels' work in this case, the fees are reduced by one-half."), *partially rev'd on other grounds*, 770 F. App'x 577 (2d Cir. 2019); *Bond v. Welpak Corp.*, No. 15-CV-2403 (JBW) (SMG), 2017 WL 4325819, at *8 (E.D.N.Y. Sept. 26, 2017) (reducing attorney's fees in FLSA case by 35% "because the recovery achieved by the prevailing plaintiffs was so limited compared to the relief sought in the complaint"); *Salustio v. 106 Columbia Deli Corp.*, No. 15 Civ. 6857 (GWG), 2017 WL 5714089, at * (S.D.N.Y. Nov. 27, 2017) (reducing hours expended by 50% where plaintiffs failed on their primary claim and recovered significantly less damages than initially sought in FLSA and NYLL case).

\* \* \*

Accounting for the recommended adjustments to the hourly rates and hours expended, I respectfully recommend $34,989.50 in attorney's fees be awarded, calculated as follows:

---

[12] As noted previously, Plaintiff abandoned his breach of contract claim as well as a portion of his original unlawful deductions claim.

| Personnel Category | Adjusted Hourly Rate | Actual Hours Expended | Adjusted Hours Expended | Totals |
|---|---|---|---|---|
| Partner | $350 | 106.50 | 69.22 | $24,227.00 |
| Mid-Level Associate | $225 | 19.10 | 12.41 | $2,792.25 |
| Paralegal/Pre-Admission Attorney | $75 | 163.50 | 106.27 | $7,970.25 |
| | | | GRAND TOTAL: | $34,989.50 |

## E. Costs

Plaintiff is entitled to his reasonable costs. N.Y. LAB. LAW § 198(1). "Recoverable costs generally include 'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *De Jesus v. Sea Crest Diner-Rest.*, No. 17-CV-275 (ADS) (SIL), 2018 WL 3742778, at * (E.D.N.Y. May 7, 2018) (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)), *R & R adopted by* 2018 WL 6418893 (Dec. 6, 2017). Plaintiff seeks reimbursement for postage, PACER access, LexisNexis access, Accurint person search, interpreting services, and damages calculation services. (*See* Dkt. No. 106-6).

"Courts have . . . allowed recovery for PACER access, postage, and legal research," as well as a person search in pursuit of proper service. *Kliger*, 2018 WL 4782342, at *11. In addition, "interpretation services are a recoverable cost." *Tacuri v. Nithin Constr. Co.*, No. 14-CV-2908 (CBA) (RER), 2015 WL 790060, at *15 (E.D.N.Y. Feb. 24, 2015) (adopting report and recommendation) (collecting cases). Plaintiff has submitted sufficient documentation of each cost. (*See* Dkt. No. 106-7). Accordingly, I respectfully recommend Plaintiff be awarded $1,041.02 in costs.

## **CONCLUSION**

For the reasons set forth above, I respectfully recommend that Plaintiff's Motion be granted in part and default judgment be entered against Defendant Vogler in the amount of (1) $36,621.75 in compensatory damages, (2) $36,621.75 in liquidated damages, (3) pre-judgment interest on his compensatory damages at a rate of 9% per annum from June 14, 2013 until judgment, (4) post-judgment interest on his entire monetary award at the rate set out in 28 U.S.C. § 1691, (5) $34,989.50 in attorney's fees, and (6) $1,041.02 in costs. Plaintiff's counsel is hereby directed to serve copies of this Report and Recommendation upon Defendant Vogler by regular and certified mail and to file proof of service with the Clerk of the Court. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Eric N. Vitaliano within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

RESPECTFULLY RECOMMENDED.


*Ramon E. Reyes, Jr.*
RAMON E. REYES, JR.
United States Magistrate Judge

Dated: October 26, 2020
Brooklyn, NY

19